# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59248-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| CHRISTOPHER LEGER, | |
| Appellant. | |

CHE, J. — Christopher Leger appeals his conviction for a felony violation of a court order—domestic violence. Leger argues he received ineffective assistance of counsel when his attorney failed to object to inadmissible hearsay evidence that violated his right of confrontation. We hold that Leger's ineffective assistance of counsel claim fails because he cannot show prejudice. Accordingly, we affirm.

## FACTS

On an early morning in August 2020, Deputy Dillon Helser responded to TF's report of a "physical disturbance" with Leger at a campsite. Rep. of Proc. (RP) at 124. Based on past contacts with TF and Leger, Deputy Helser knew that they were dating. Deputy Helser confirmed there was a no contact order (NCO) in place—issued in February 2020 and expiring five years from the issuance date—that prohibited Leger from having contact with TF. In relevant part, the NCO stated, "do not contact the protected person, directly, indirectly, in person

or through others . . . [and] do not knowingly enter, remain, or come within 250 [feet] of the protected person's residence." Ex. 2 at 2.

As Deputy Helser drove toward the campsite, he saw Leger walking down the road with some of his belongings. Deputy Helser stopped to ask Leger what had occurred. Leger acknowledged that he was aware of the NCO. He explained that he lived at the campsite, that TF had come to the campsite, that TF often came to the site to bring supplies, and that he just wanted to get away from her.

Deputy Helser arrested Leger, and the State charged Leger with one count of a felony violation of a court order—domestic violence. Deputy Helser proceeded to the campsite and located TF's van there. Officers interviewed TF. TF refused to give a written or audio recorded statement because she "hated cops," so Deputy Helser prepared a police report with relevant information TF provided to law enforcement, including TF's quoted statements.[1] RP at 172.

At trial, TF testified that she and Leger were "lovers" and that they had been together for "[t]hree, five years." RP at 159. She explained that in August 2020, she and Leger had been living together at the campsite "[o]ff and on." RP at 160. When questioned whether she and Leger were together in 2020 and living at the campsite, TF stated, "I'm sure, yeah." RP at 163.

TF recalled speaking with law enforcement about the August contact. But when asked whether she remembered telling the police that she and Leger could not be apart and needed each other, TF stated, "Not really. I don't remember anything about that." RP at 161. When asked

---

[1] The police report was marked as an exhibit but not admitted as evidence. It is not part of the record on appeal.

whether she remembered telling the police that she had been arguing with Leger over her broken CD player, TF stated, "No." RP at 162. When asked whether she remembered talking to law enforcement, TF stated, "Sort of. Not really." RP at 163. Shortly thereafter, she invoked her Fifth Amendment right to remain silent. When defense counsel asked TF whether she had any recollection of the August incident, she again invoked her Fifth Amendment right to remain silent. The State then informed the trial court that it "would not ask that [TF] be subject to recall," and the court released TF.

After the court released TF, the State began to lay foundation for TF's oral statements made to Deputy Helser during the contact as a recorded recollection under ER 803(a)(5). The State recalled Deputy Helser, who then testified that TF stated she and Leger had been "dating for some time" and had been sleeping together in the van. RP at 173. Deputy Helser also testified that TF stated she and Leger had fought that morning over a broken CD player of hers and that she believed Leger owed her money because of the damage. In addition, TF told Deputy Helser that she and Leger could not be apart and needed each other. Leger did not object to this portion of Deputy Helser's testimony.

Leger testified that when Deputy Helser contacted him in August 2020, he had no car and had been living at the campsite for about four months. While Leger lived there, TF showed up unexpectedly a few times, and when she did so, Leger would usually "take off."[2] RP at 182. In this instance, TF drove to the campsite around dinnertime the night before. Leger then walked

___

[2] TF would drop off clean clothes, food, water, and other supplies. Sometimes, TF would show up at the campsite while Leger was away, and she would leave before he got back.

away from the campsite and went to a lookout spot to watch the site while waiting for TF to leave.

Leger "really didn't know what else to do. [He] didn't really want [TF] to go away." RP at 184. Leger eventually returned to the campsite due to hunger. "And then [TF] came out [of her van] and said something, and I don't remember exactly what happened. I walked over to [TF's] van where she was at and to get blankets or something, and [ ] -- I started yelling at her, 'Why [do] you keep doing this to me? You got to go. Get the f[**]k out of here.'" RP at 184. Leger then began to state, "[A]t that point, I leaned over her," but his counsel interrupted Leger to ask a question. RP at 185.

Leger then testified, "Because [I was] grabbing the blankets, I also grabbed my tablet that [TF] had taken before. I saw that laying on the floor, and I grabbed that." RP at 185. When cross-examined about his contact with Deputy Helser, the following exchange occurred:

> [STATE:] In fact, you told Deputy Helser that you were trying to get away from [TF] because she was going crazy on you?
>
> [LEGER:] When she's screaming and yelling, saying she's going to call the cops and have me arrested and turn in jail . . . Yeah, I would call that freaking out. She's throwing my stuff all over. I mean, yeah, I got the heck out of there.
>
> [STATE:] In fact, you pointed at your neck and said [TF] had grabbed you by the throat?
>
> [LEGER:] She may have. I know she slapped me once when I was trying to get over there, trying to get over the top of her. She was trying to smack a cigarette out of my mouth or something, and she smacked me.

RP at 186.

4

The jury found Leger guilty of a felony violation of a court order—domestic violence.

Leger appeals.

ANALYSIS

Leger contends that he received ineffective assistance of counsel when his attorney failed to object to TF's statements on both hearsay and confrontation clause grounds. We disagree that counsel provided ineffective assistance.

A.    *Legal Principles*

Criminal defendants have a right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.

To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). We make a strong presumption that counsel's performance was reasonable. *Id.* at 130. To rebut this presumption, a defendant must show there was no possible legitimate trial tactic that would explain counsel's performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

To demonstrate prejudice, a defendant must show a reasonable probability that the outcome of the trial would have differed absent counsel's deficient performance. *Bertrand*, 3 Wn.3d at 129. A mere showing that errors had some conceivable effect on the outcome of the proceeding is not enough. *Strickland*, 466 U.S. at 693. If a claim of ineffective assistance of

counsel fails to support a finding of either deficiency or prejudice, it fails, and we need not address both components of the inquiry. *Id.* at 697.

If a defendant's claim of ineffective assistance of counsel centers on their attorney's failure to object, then they must show that the objection would likely have succeeded. *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019).

B.      *Leger Fails to Demonstrate Prejudice*

Even assuming without deciding that Leger's counsel's performance was deficient, Leger fails to show prejudice—that the result of his trial would likely have been different absent TF's statements. Leger contends that his counsel's failure to object prejudiced him because whether he had intentional contact with TF was the primary issue before the jury.

But Leger's own testimony established his contact with TF. Leger testified that he walked to the van where TF was located, that "[he] leaned over her," and that TF slapped him when he was "trying to get over the top of her." RP at 185-86. In addition, Leger admitted to yelling at TF, "'Why [do] you keep doing this to me? You got to go. Get the f[**]k out of here.'" RP at 184.

Thus, Leger suffered no prejudice from the admission of TF's statements through Deputy Helser's testimony. We hold that Leger's ineffective assistance of counsel claim fails because Leger cannot show prejudice.

No. 59248-7-II

CONCLUSION

We hold that Leger's ineffective assistance of counsel claim fails because he cannot show prejudice. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, J.

Veljacic, A.C.J.

7